RENDERED: APRIL 19, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1175-MR

ESTATE OF CHARLES MILDRED
HARDIN, BY KATHY PEARLENE
GOODWIN, ADMINISTRATRIX;
AND JAMES LEON HARDIN                                    APPELLANTS


                        APPEAL FROM SPENCER CIRCUIT COURT
v.                      HONORABLE CHARLES R. HICKMAN, JUDGE
                        ACTION NO. 18-CI-00106


JOHN RILEY; CHRIS LIMPP;
AND NATHAN NATION                                        APPELLEES


                                OPINION
                                AFFIRMING

                            ** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; GOODWINE AND TAYLOR,
JUDGES.

TAYLOR, JUDGE: The Estate of Charles Mildred Hardin, by Kathy Pearlene

Goodwin, Administratrix, and James Leon Hardin (the Estate) bring this appeal

from a September 7, 2022, Opinion and Order of the Spencer Circuit Court

granting summary judgment in favor of John Riley, Chris Limpp, and Nathan Nation upon the basis of qualified official immunity. We affirm.

On June 13, 2017, Charles Mildred Hardin suffered an apparent heart attack at her home in Taylorsville, Kentucky. Her family initiated several calls to 911 for emergency assistance. The exact events that followed are disputed; however, several witnesses described those events as chaotic. While Hardin lay unconscious on her kitchen floor without a discernable pulse, her daughter exited the home and yelled at members of the Taylorsville-Spencer County Fire Protection District (TSFPD)[1] to bring a shocker (defibrillator). For some unknown reason, one member of TSFPD thought the daughter said "shot her" or "shooter," so TSFPD members refused to enter the home. Instead, the police were contacted. Thereupon, a dispute arose between Hardin's son and a member of TSFPD that led to a verbal altercation. Hardin was eventually taken by ambulance to the hospital, where she died a few days later.

Ultimately, the Estate filed a complaint in the Spencer Circuit Court against Spencer County Emergency Medical Services (SEMS);[2] Spencer County Fiscal Court; TSFPD; Limpp, in his individual capacity; Nation, in his individual

---

[1] Throughout this Opinion, Spencer County Fire Protection District is referred to as TSFPD or SCFD.

[2] Throughout this Opinion, Spencer County Emergency Medical Services is referred to as SEMS or SCEMS.

-2-

capacity; and Riley, in his individual capacity.  Relevant to this appeal, it was alleged:

(3)     Defendant Chris Limpp is a citizen of the Commonwealth of Kentucky and the Director of Defendant Spencer County Emergency Medical Services ("SEMS"), which provides ambulance and other medical emergency services for Spencer County in the Commonwealth of Kentucky.

(4)     Defendant Nathan Nation is a citizen of the Commonwealth of Kentucky and the Fire Chief of Defendant  Taylorsville-Spencer County Fire Protection District ("TSFPD"), which provides emergency fire and rescue services for Spencer County in the Commonwealth of Kentucky.

. . . .

(6)     Defendant John Riley was at the time of the incident complained of herein the Spencer County Judge Executive charged with oversight of the Spencer County Fiscal Court and all agents, employees, servants and entities subject to the control of the Spencer County Fiscal Court.

(7)     The true names and capacities of the Defendants identified as John Doe(s) are currently unknown to the Plaintiffs.  At all times relevant, these individuals were agents, employees, or servants of Defendants SEMS, TSFPD, and Spencer County Fiscal Court who participated in the acts alleged in this Complaint that resulted in the untimely death of Decedent.  The Plaintiffs will seek leave to amend this Complaint as the names and capacities of these John Doe Defendants become known through discovery.

. . . .

(9) Realizing that she was in distress, James Leon Hardin called their daughter, who in turn called for an ambulance and for assistance from SEMS [Spencer County Emergency Medical Services] and TSFPD [Taylorsville-Spencer County Fire Protection District].

(10) After an initial call was made at 7:23 p.m., several additional calls were made to dispatchers to inquire as to when assistance would arrive.

(11) Upon information and belief, at the time the emergency calls were placed, both SEMS ambulances and John Doe SEMS personnel were not at their station; rather, they were at a local park watching their children play soccer.

(12) Upon information and belief, before dispatchers could send an ambulance to Decedent's rescue, they were required to contact a member of Defendant Spencer County Fiscal Court, seeking permission.

(13) As a result of these delays, emergency personnel did not finally arrive on scene until sometime after 8 p.m.

(14) A John Doe Defendant from the TSFPD arrived first on the scene but made no effort to assist Decedent and, instead, created a disturbance, further delaying any help Decedent hoped to receive.

(15) The John Doe Defendants who arrived on scene failed to act with any urgency.

(16) The John Doe Defendants took no steps to assist with Decedent's breathing. The Defendants did not intubate the Decedent, nor did they utilize a cardiopulmonary resuscitation (CPR) machine.

(17) Even though Decedent had been diagnosed with chronic obstructive pulmonary disease, an affliction that

blocks airflow and makes it difficult to breathe, she was not provided with oxygen.

(18)   When she was removed from the scene, Decedent was placed on a stretcher and wheeled out of her home with her naked body exposed to the public eye.

(19)   Decedent was transported to Jewish Hospital in Shelbyville Kentucky, arriving at 8:47 p.m.

(20)   Once at Jewish Hospital, Decedent was placed on life support.  She remained on life support until June 16, 2017, when life support was removed and Decedent passed away.

(21)   Doctors determined that as a result of her ordeal, Decedent had suffered a global anoxic injury, with her brain deprived of oxygen for far too long.

## COUNT I: NEGLIGENCE/GROSS NEGLIGENCE/FAILURE TO PROVIDE TIMELY AND ADEQUATE CARE

(22)   At all times relevant to this action, all Defendants had a duty to exercise reasonable care for the health and safety of Decedent.

(23)   Notwithstanding this duty, the Defendant entities, and their John Doe agents, servants, and employees, committed a gross and wanton breach of this duty in one or more of the following ways:

a.    Carelessly and negligently delayed their response to Decedent;
b.    Carelessly and negligently attended to Decedent;
c.    Carelessly and negligently failed to provide adequate life support measures;

-5-

    d.      Carelessly and negligently failed to request further assistance within an appropriate time;

    e.      Carelessly and negligently delayed obtaining further assistance;

    f.      Carelessly and negligently allowed Decedent to be transferred from the scene without provision of adequate life support; and

    g.      Carelessly and negligently failed to request advanced life support assistance in moving a patient who needed additional on-scene resuscitation efforts.

(24)  The Defendants committed these acts with wanton and reckless disregard for the life and safety of Decedent.

(25)  As a direct and proximate result of the wrongful acts and omissions of the Defendants, Decedent suffered extensive and severe injuries, including pain, suffering, mental and physical anguish, injuries, damages, and other pecuniary losses.

(26)  These damages are in an amount in excess of the minimum dollar amount necessary to establish the jurisdiction of this Court.

## COUNT II: NEGLIGENCE/GROSS NEGLIGENCE, TRAINING AND SUPERVISION

(27)  The Plaintiffs repeat all of the preceding allegations of this Complaint and in addition allege the following.

(28)  The Defendant entities and supervisors failed to provide the John Doe Defendants with the training, supervision, and equipment necessary to fulfill the duty of reasonable care for the health and safety owed to Decedent.

-6-

(29)   The Defendant entities and supervisors knew, from past experiences, that the lack of training and supervision provided to the John Doe Defendants and other employees created a risk of harm such as that suffered by Decedent.

(30)   In light of this prior knowledge, the Defendant entities and supervisors acted with wanton and reckless disregard for the life and safety of Decedent.

(31)   As a direct and proximate result of the negligent training and supervision committed by the Defendants, Decedent suffered extensive and severe injuries, including pain, suffering, mental and physical anguish, injuries, damages, and other pecuniary losses.

(32)   These damages are in an amount in excess of the minimum dollar amount necessary to establish the jurisdiction of this Court.

## COUNT III: WRONGFUL DEATH

(33)   The Plaintiffs repeat and reallege all of the preceding allegations of this Complaint and in addition allege the following.

(34)   As a direct and proximate result of the negligent and wrongful acts and omissions of the Defendants, Decedent suffered extensive and severe injuries that resulted in her death.

(35)   The damages suffered include physical and mental injuries suffered due to the Defendants' negligent acts and omissions, as well as the medical and other final expenses incurred as a result of Decedent's passing.

August 16, 2018, Second Amended Complaint at 3-7.

Eventually, Riley, Limpp, and Nation filed motions for summary judgment claiming entitlement to qualified official immunity. Riley, Limpp, and Nation argued that the Estate's claims were based upon their alleged failure to properly train, supervise, and equip SEMS and/or TSFPD personnel. Riley, Limpp, and Nation maintained that their actions related thereto were not ministerial but fundamentally discretionary. Assertions that these actions were performed in good faith and within the scope of their employment, Riley, Limpp, and Nation argued that the Estate's claims were barred by qualified official immunity.

The Estate responded to the motions for summary judgment. According to the Estate, Riley, Limpp, and Nation disregarded and failed to comply with various provisions of the Spencer County Administrative Code and Spencer County Emergency Medical Services Standard Operating Guidelines, which imposed ministerial duties upon each of them. As to such ministerial duties, the Estate argued that Riley, Limpp, and Nation were not entitled to qualified official immunity.

By order entered September 7, 2022, the circuit court rendered summary judgment in favor of Riley, Limpp, and Nation and reasoned:

> The Second Amended Complaint alleges that Limpp, Riley, and Nation failed to provide the responding volunteer firefighters and SCEMS employees with the training, supervision, and equipment for them to

fulfill the duty of reasonable care owed to Hardin. The 911 call from Hardin's family was placed at 7:49 p.m. on June 13, 2017[,] and the ambulance arrived on the scene at 8:03 p.m. At 7:54 p.m., dispatch requested that the Taylorsville-Spencer County Fire Protection District should respond to the Hardin medical run. Five volunteer firefighters, three in their personal vehicles and two arrived in an official vehicle, arrived at varying times before the ambulance arrived. None of the volunteer firefighters were equipped with [an] AED (Automated External Defibrillator). An AED is included in the equipment kept on an "apparatus truck," but no apparatus truck attended the scene of the Hardin medical run. The first arriving volunteer firefighter, Doug Herndon,[3] who lived approximately 1,000 feet from the Hardin residence, found Charles Mildred Hardin unconscious on the kitchen floor. Herndon searched for a pulse, found no pulse, and began to perform CPR on Hardin until SCEMS arrived. Additional volunteer firefighters arrived on scene, as they approached the residence, one of the volunteers heard a female yelling "shot her." (Later it was determined that the yelling female (Hardin's daughter) was not yelling "shot her," rather she was yelling about the need for a "shocker," referencing a defibrillator.) The volunteer firefighters radioed in this information to dispatch and halted entering the residence until law enforcement could arrive. Hardin's son became upset at the volunteer firefighters refusing to enter the house to help his mother, and a verbal argument broke out between the son and one of the volunteer firefighters. This verbal argument prompted another radio call for law enforcement to get to the residence. Law enforcement arrived and settled tempers. There were also a number of additional family members and neighbors who had gathered in the front yard of the Hardin residence during this time frame, creating what was described as a chaotic atmosphere. When the ambulance arrived, it had to park

---

[3] Doug Herndon lived within 1,000 feet of Charles Mildred Hardin's home and was a volunteer emergency medical technician for Mount Eden, Kentucky.

50 feet to 100 feet away from the driveway because of the number of vehicles and people that had gathered at the Hardin residence. Once the ambulance arrived, Charles Mildred Hardin was put on a stretcher, placed in the ambulance, and taken to Jewish Hospital Shelbyville. She was placed on life support, but died three days later on June 16, 2017.

Nation, as Chief of the Fire District, is appointed by the Board of Trustees of the Fire District to oversee the day-to-day business of the Fire District. Nation, as Chief, does not have the authority to hire, fire, or discipline Fire District employees or any of the 50 volunteer firefighters of the Fire Department, with the Board of Trustees retaining such authority. Nation is responsible for the training and certification of the employees and volunteers for the Fire District. The Fire District provides supplemental medical services to SCEMS. Volunteer firefighters are expected to provide supplemental basic medical care and operate on the scene under the direction of SCEMS direction and supervision. The Kentucky Fire Commission sets the minimum requirements as to training and certifications for volunteer firefighters. See [Kentucky Revised Statutes] KRS 95A.040. All of the volunteer firefighters that participated in the Hardin medical run were up to date on their mandatory training and were properly certified. None of the volunteer firefighters were equipped with an AED. There is no policy or rule that volunteer firefighters are required to have medical equipment in private vehicles (3 or the 5 volunteers arrived in their personal vehicles) and there is no policy/rule that volunteer firefighters be equipped with a defibrillator, cardiac monitor or mechanical CRP device. Plaintiffs point to a rule in the Fire District's EMS Assist Program which states that "Any EMTs responding directly to the scene shall provide their own trauma kit." Not all volunteer firefighters are EMTs for application of the rule. Plaintiffs provide no evidence or proof that an AED would be included in a trauma kit. Nation indicates that

-10-

a trauma kit contains supplies to treat physical injuries resulting from trauma, typically to treat blood loss, and such kit would include gloves, sponges, bandages, dressings, and a tourniquet.

Plaintiffs are critical of Riley and Limpp for the fourteen minutes it took for an ambulance to arrive at the Hardin residence after the 911 call was made for assistance and that Spencer County was only operating two code-complaint EMS vehicles on the date of the Hardin medical run. There is no support or context for Plaintiffs' conclusory argument that a fourteen minute[ ] response time for an ambulance is excessive. The ambulance came from Waterford Park, Taylorsville, Kentucky[,] to 102 Evelyn Drive, Taylorsville, Kentucky[,] a distance of eleven miles, in fourteen minutes. SCEMS and its ambulance serve Taylorsville and the whole Spencer County, there is no reasonable expectation that an ambulance will be present in close proximity to the location of a medical emergency. The responding ambulance was sufficient to handle the medical emergency call at the Hardin residence. Plaintiffs also argue that EMTs are to be provisioned with a trauma kit, which the Court addressed above, as there is no indication that an AED would be included in such trauma kit.

Plaintiffs are critical of Nation, Riley, and Limpp as to the personnel that responded to the Hardin medical run. All the responding personnel were up-to-date on their mandatory training and certifications. The requirement of any additional training beyond the mandatory training required for volunteer firefighters and EMS personnel, such as scene management training, would be a decision left to the discretion of Nation, Riley, or Limpp. Such a decision would be a discretionary act. There is no evidence that Nation, Riley, or Limpp had previously received any complaints regarding the competence or conduct of the various responding volunteer firefighters or EMS personnel prior

-11-

to the Hardin medical run. Nation, Riley, and Limpp were not personally involved in providing medical services for the Hardin medical run. (Limpp was present on scene, arriving after the ambulance got to the Hardin residence.) Their liability would extend from their failure to train, supervise, or equip their personnel. Plaintiffs have not demonstrated that Nation, Riley or Limpp failed as to any ministerial duties as it relates to the training, supervision, or equipping of the personnel involved with the Hardin medical run. Nation, Riley, and Limpp are public officers or employees that are cloaked with qualified official immunity for discretionary acts. Nation, Riley, and Limpp were conducting themselves within the scope of their employment to train, supervise, and equip their personnel with SCEMS and the Fire District and there is no evidence to support a finding of bad faith in the circumstances before the Court by any of these gentlemen. Plaintiffs have failed to establish that Nation, Riley or Limpp violated any ministerial duties and they are cloaked with qualified official immunity as to their discretionary acts.

September 7, 2022, Opinion and Order at 3-7. The circuit court included complete Kentucky Rules of Civil Procedure (CR) 54.02 language in the order. This appeal follows.

To begin, summary judgment is proper where there exists no material issue of fact, and movant is entitled to judgment as a matter of law. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991). All facts and inferences therefrom are viewed in a light most favorable to the nonmoving party. *Id.* And, our review of a summary judgment is always *de novo*. *Seiller Waterman,*

*LLC v. Bardstown Cap. Corp.*, 643 S.W.3d 68, 74 (Ky. 2022); *Cunningham v. Kroger Ltd. P'ship I*, 651 S.W.3d 199, 202 (Ky. App. 2022).

The Estate argues that the circuit court erroneously rendered summary judgment concluding that Riley, Limpp, and Nation were entitled to qualified official immunity. In particular, the Estate contends that Riley, Limpp, and Nation breached ministerial duties and thus, were not entitled to the protection of qualified official immunity.

Public officials and employees may be shielded from negligence actions when sued in their individual capacities by qualified official immunity. Qualified official immunity is applicable to a discretionary act when performed by the official in good faith and within the official's scope of authority or employment. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). To be entitled to qualified official immunity, the public official must be performing a discretionary act as opposed to a ministerial act. *Id.* So, the distinction between a discretionary act and a ministerial act is pivotal in determining entitlement to qualified official immunity.

A discretionary act involves "the exercise of discretion and judgment, or personal deliberation, decision, and judgment[.]" *Id.* at 522. On the other hand, a ministerial act generally "requires only obedience to the orders of others, or when

the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.*

The Estate's claims against Riley, Limpp, and Nation are not premised upon their personal care of the decedent but rather center upon their alleged failures to properly train, supervise, and/or equip members of SEMS, of TSFPD, and/or these organizations. In particular, the Estate alleges that the following ministerial duties were breached:

> [1] [T]he SCEMS personnel who responded to the incident were inexcusably late – it took 14 minutes to arrive at the scene where Ms. Hardin was already in full cardiac arrest – because all SCEMS personnel and vehicles were located at a softball game on the other side of the county[.] . . .
>
> [2] (4) code-compliant EMS vehicles were available for use for SCEMS personnel in 2016 and [2017], but only (2) such vehicles were in use on June 13, 2017. . . .
>
> [3] Limpp nor Judge Riley had abided by their duties to *execute* and *administer* clear policies relating to the provision of emergency medical services in Spencer County. For example, the SCEMS personnel had no direction as to where or how they were to maintain the SCEMS vehicles while on duty, thus they incorrectly concluded that having all personnel attend a softball game at the same time would not impede their ability to promptly respond to calls for help. . . .
>
> [4] Judge Riley and Mr. Limpp also failed to execute administrative policies regarding the mutual-aid agreement between SCEMS and SCFD. . . .
>
> . . . .

-14-

[5] Chief Nation failed to execute administrative policies regarding the mutual-aid agreement between SCEMS and SCFD. Again, under the Taylorsville-Spencer County Fire Department EMS Assist Program, the "Minimum Requirements for Responders" include that they be "AED Certified;" that "Any EMT's responding directly to the scene shall provide their own trauma kit" . . . . Here, the mutual-aid SCFD responders who showed up at Ms. Hardin's house did not have their own trauma kits, and appear not to have understood that Ms. Hardin was in a state where equipment including and AED would have been appropriate. . . .

Appellants' Brief at 12-14. The Estate believes that the above duties were ministerial because they involved only the execution and enforcement of fixed policies or rules. However, the Estate fails to cite this Court to any specific policy or rule that requires SEMS to arrive at the scene in less than fourteen minutes, to have SEMS ambulances positioned at certain locations, or to require TSFPD personnel to carry AED devices.

In its brief, the Estate relies upon general policies or rules which do not create ministerial duties. The Estate also references some specific policies/rules that were either fully complied with or are otherwise not relevant to the facts of this case. For instance, the Estate points out that Riley, as judge executive, was required to properly execute Spencer County policies, such as providing emergency services to the citizens of Spencer County. It is uncontroverted that Spencer County provides such emergency services; thus, any

-15-

ministerial duty created thereby was not violated. In another example, the Estate points out that Limpp, as director of SEMS, was required to maintain SEMS's mutual aid agreements and operate one ALS ambulance and one BLS ambulance. It was clearly established that such mutual aid agreements existed and that two ambulances were maintained by SEMS. The Estate also cites to a provision in the TSFPD Assist Program that specifically mandates responders be AED certified, and it is undisputed that the responders on the day in question were so certified.

As the Estate has failed to establish a specific policy, procedure, regulation, statutory duty, or common-law duty binding Riley, Limpp, and Nation, we believe that their general actions of supervising individuals are discretionary to which qualified official immunity is applicable. *Hanely v. Monsky*, 311 S.W.3d 235, 244-46 (Ky. 2010); *Marson v. Thomason*, 438 S.W.3d 292, 299-300 (Ky. 2014). Likewise, as the Estate has failed to establish a specific policy, procedure, regulation, statutory duty, or common-law duty obligating Riley, Limpp, and Nation, we conclude that their decisions of how to equip TSFPD or SCEMS are also discretionary. These decisions clearly involve the consideration of a myriad of factors including the financial resources of the county and public entities operating thereunder. And, as to training of personnel, KRS 95A.040 clearly provides that the "[m]inimum standards and education of fire protection personnel" are to be recommend by the Kentucky Fire Commission to the Governor, General

-16-

Assembly and the Kentucky Community and Technical College System. Moreover, under KRS 95A.040, the Kentucky Fire Commission has the authority to "[c]ertify fire protection training and education programs as having attained the minimum required standards[.]" Here, it is uncontroverted that the TSFPD personnel, who responded to the emergency at the Hardin's residence, met the minimum training requirements. The Estate has not cited to this Court any more stringent requirements that may have been applicable and not met by TSFPD personnel.

As the Estate has advanced no allegations that Riley, Limpp, or Nation failed to act in good faith or outside the scope of their employment as concerns their discretionary decisions implicated in this action, we hold that Riley, Limpp, and Nation were entitled to the shield of qualified official immunity in this case.

We view any remaining contentions of error to be moot or without merit.

For the foregoing reasons, the Opinion and Order of the Spencer Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Mark D. Dean
Shelbyville, Kentucky

BRIEF FOR APPELLEE NATHAN NATION:

John L. Tate
J. Brittany Cross Carlson
Bethany A. Breetz
Louisville, Kentucky

BRIEF FOR APPELLEES CHRIS LIMPP AND JOHN RILEY:

Carol Schureck Petitt
Pewee Valley, Kentucky